IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BENJAMEN HILL, | ) | Case No. 3:19-cv-1196 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| WANZA JACKSON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Benjamen Hill, an Ohio prisoner at the time he filed his petition[1], seeks a writ of habeas corpus under 28 U.S.C. § 2254. Hill claims that the revocation of his controlled release and his underlying conviction in *State v. Hill*, Henry Cty. Ct. Comm. Pl. Case No. 17-CR-0040, violated his constitutional rights. ECF Doc. 1. Respondent Warden Wanza Jackson filed a return of writ on October 1, 2019. ECF Doc. 13. Hill filed a traverse on October 28, 2019. ECF Doc. 15. This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Hill's petition.[2] Because Hill's claims are

---

[1] A search for Benjamen Hill, Prisoner No. A744189 (and Benjamin Hill, the name used in his state criminal proceedings) in Ohio's prisoner database does not yield any results. *See* Ohio Offender Search, https://appgateway.drc.ohio.gov/OffenderSearch (last visited Sept. 28, 2020). And this court's records reflect that, in May 2020, Hill relocated to a residence in Adrian, Michigan. *See* ECF Doc. 19-7. Because Hill was an Ohio prisoner when he filed his petition, his later release from custody does not deprive this court of jurisdiction to review the claims challenging his state court conviction. *See Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968) (holding that the non-custodial "collateral consequences" attending a prior conviction prevent a habeas petition from becoming moot when the petitioner was released after he filed his petition).

[2] Chief Judge Patricia A. Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference. ECF Doc. 5.

procedurally defaulted, non-cognizable, and/or meritless, I recommend that the Court deny Hill's petition for writ of habeas corpus.

## I.    State Court History

### A.    State Trial Court, Case No. 17-CR-0040

#### 1.    Conviction and Sentence

On March 22, 2017, a Henry County, Ohio, grand jury indicted Hill on: one count of assault of a police officer in violation of Ohio Rev. Code § 2903.13(A)(5); and one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(B). ECF Doc. 13-1 at 7-8. On June 1, 2017, Hill pleaded guilty pursuant to a written plea agreement. ECF Doc. 13-1 at 14-15. The written plea form said that the state agreed to amend the aggravated robbery count to attempted robbery and recommend a community control sentence. ECF Doc. 13-1 at 14. The written plea also stated that Hill understood that he faced a maximum 18-month prison term for each offense, a maximum fine of $5,000, three years' post-release control, and the possible imposition of a prison sentence if he violated the terms of his post-release control or community control, if granted. ECF Doc. 13-1 at 14-15. The state trial court entered an order accepting the state's amendment to the robbery charge and accepting Hill's guilty plea. ECF Doc. 13-1 at 17. The court noted that it: (1) had explained to Hill the nature of the charges as amended, the possible penalties for those offenses, and his constitutional and statutory rights (including the right to appeal his conviction); and (2) found that Hill voluntarily and knowingly pleaded guilty to assault on a peace officer and attempted robbery. ECF Doc. 13-1 at 17.

On July 11, 2017, the state trial court sentenced Hill to three years' community control. ECF Doc. 13-1 at 20. The court ordered that Hill would be subject to the standard terms and conditions of community control imposed by the Henry County Adult Probation office and that

he would also have to comply with any recommendations for care following an evaluation by Maumee Valley Guidance Center.  ECF Doc. 13-1 at 20.  The court also warned Hill that he would be sentenced to two consecutive 18-month terms for each count against him if he violated the terms of his community control.  ECF Doc. 13-1 at 20.

Hill did not appeal.

### 2.     First Revocation Proceeding

On July 12, 2017, the state moved to revoke Hill's community control because he'd violated its terms by causing or attempting to cause physical harm to a family or household member.[3]  ECF Doc. 13-1 at 22.  On November 1, 2017, the court issued an order memorializing that Hill had knowingly and voluntarily admitted to the violation.  ECF Doc. 13-1 at 24.  The court directed that: (1) community control was to be continued on the same terms and conditions originally ordered; (2) Hill was to be assessed through Recovery Services and comply with all recommendations of that agency; and (3) Hill was not to consume alcohol or be in any alcohol-selling establishments as an additional term of community control.  ECF Doc. 13-1 at 24-25.

Hill did not appeal.

---

[3] Although the record for the underlying incident does not appear in the record for this case, the court may take judicial notice that Hill was charged with disorderly conduct in the Napoleon Municipal Court after he had allegedly slapped a female victim three times on the left side of the face, choked her, and pushed her into a refrigerator on July 11, 2017.  *State v. Hill*, 2018-Ohio-1345, at ¶2 (Ohio App. Ct. 2018); *see also State v. Hill*, Docket for Napoleon Mun. Ct. Case No. 1700639, *available at* http://www.napoleonmunicipalcourt.com/recordSearch.php (last visited Sept. 30, 2020); *see also Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record."); Fed. R. Civ. P. 201.  Hill pleaded guilty to the charge on September 21, 2017, and he was sentenced to a suspended 30-day jail term. *Id.* at ¶3.  On April 9, 2018, the Ohio Court of Appeals affirmed in part, reversed in part, and remanded the case to the Napoleon Municipal Court to determine whether the criminal complaint was sworn under oath.  *Id.*  On June 26, 2018, the Napoleon Municipal Court received testimony that the complaint was not sworn under oath and dismissed the case.  *State v. Hill*, Docket for Napoleon Mun. Ct. Case No. 1700639, *available at* http://www.napoleonmunicipalcourt.com/recordSearch.php (last visited Sept. 30, 2020).

### 3. Second Revocation Proceeding and Related Municipal Charges

On December 22, 2017, Hill was arrested and charged with resisting arrest and disorderly conduct in the City of Bryan, Ohio Municipal Court. *See* ECF Doc. 13-1 at 26-27. On January 9, 2018, Hill pleaded guilty to the resisting arrest charge and the municipal court sentenced him to a suspended 90-day jail term. ECF Doc. 13-1 at 27. On January 18, 2019, the Ohio Court of Appeals vacated the conviction and remanded the case to the municipal court because there was no record of the plea colloquy to show that Hill's plea colloquy complied with the requirements of Ohio R. Crim. P. 11, and the municipal court dismissed the case on remand. ECF Doc. 13-1 at 28-33.

On January 3, 2018 – six days before Hill pleaded guilty in the Bryan Municipal Court– the state filed a motion in the Henry County Court of Common Pleas to revoke Hill's community control because he had violated the terms of community control on December 22, 2017, by: (1) violating the law by (a) breaking an in-car video system in a patrol vehicle owned by the City of Bryan, Ohio; (b) resisting arrest in the City of Bryan, Ohio; (c) engaging in disorderly conduct while intoxicated; (d) entering and remaining in a Circle K in Bryan, Ohio without privilege to do so; and (2) consuming alcohol. ECF Doc. 13-1 at 35.

On April 17, 2018, the trial court conducted a probable cause hearing, at which Hill was represented by counsel. ECF Doc. 13-2 at 7-10. The prosecuting attorney and Hill's probation officer, Derrick Noffsinger were also present. ECF Doc. 13-2 at 8. The court explained each of the allegations against Hill, and Hill denied them. ECF Doc. 13-2 at 8-10. Because Hill denied the allegations, the court scheduled a formal revocation hearing. ECF Doc. 13-2 at 10.

On May 1, 2018, the state trial court held the formal revocation hearing, at which Hill was represented by appointed counsel. ECF Doc. 1 at 36; ECF Doc. 13-2 at 12-33. At the

4

hearing, Noffsinger testified that he had reviewed the terms of Hill's community control with Hill on July 11, 2017, and that those terms included that Hill "[b]e law abiding, not commit new offense, new criminal offenses, keep [Officer Noffsinger] informed of his place of residence and any changes in that." ECF Doc. 13-2 at 15-16  Noffsinger also said that he reviewed with Hill the additional terms imposed after the first revocation hearing, including that Hill not consume alcohol. ECF Doc. 13-2 at 15-16.

Officer Steven Doctor testified that he responded to a call on December 22, 2017, alleging that an individual (later identified as Hill) stole a soft drink and was yelling at and threatening customers at a Circle K gas station. ECF Doc. 13-2 at 18.  Doctor said that Hill was "noticeably intoxicated while [he] was talking to him," and warned him that he would be arrested for disorderly conduct if he didn't go home. ECF Doc. 13-2 at 18.  Hill left, but twenty minutes later Doctor was informed that an individual meeting Hill's description was yelling profanities while walking down the street and attempting to start a fight with someone. ECF Doc. 13-2 at 18-19.  Doctor found Hill when he went to the scene and told Hill he was under arrest.  ECF Doc. 13-2 at 19.  Hill said "no," put his hand in his pocket, and struggled with Doctor.  ECF Doc. 13-2 at 19.  After placing Hill into custody, Doctor took Hill to the hospital because Hill said he was hurt. ECF Doc. 13-2 at 19.  Another officer took Hill from the hospital to the jail, and Doctor said that Hill "was combative during transport, laying on his back and kicking the ceiling, [and] broke the camera out of the back of the patrol car." ECF Doc. 13-2 at 19.

Hill also testified at the hearing. ECF Doc. 13-2 at 22.  Hill said that he had reviewed the terms of his community control with his probation officer and understood those terms. ECF Doc. 13-2 at 23-24.  Hill said that a different officer – not Doctor – had initially confronted him at the Circle K, and that the officer who arrested him didn't give him a chance to explain himself

or "provide a proper defense."  ECF Doc. 13-2 at 25-26.  Hill said that the hospital did not test

him for alcohol or drugs and that "[t]here is no physical evidence to prove that [he] was

[drinking] and [he] can't say that [he] was drinking."  ECF Doc. 13-2 at 26-27.  Hill testified that

he had pleaded guilty to the resisting arrest charge only because he believed he would be

admitted to the SEARCH Program and because he wanted to expedite the process so he could

see his daughter graduate.  ECF Doc. 13-2 at 27.

> The trial court stated:
>
> the state has met its burden with regard to Item #1, a violation of conditions of
> supervision that the individual will obey federal, state and local laws and
> ordinances based upon the convictions out of the Bryan Municipal Court that
> occurred on January 9, 2018 where there was a guilty finding to a misdemeanor
> two, resisting arrest, and the disorderly conduct with persistence, a misdemeanor
> four, that would constitute the violations.  As such, the Court, at this time would
> enter a finding of true or of guilt on that particular count.

ECF Doc. 13-2 at 30.  The court also issued a written order, finding that "the State has met its

burden to support the allegations submitted in the motion to revoke Community Control as listed

in Item #1 – B and Item #2 – C."  ECF Doc. 13-1 at 36.  The court sentenced Hill to two

consecutive 18-month prison terms, one for each of the original counts.  ECF Doc. 13-1 at 36-37;

ECF Doc. 13-2 at 32-33.  The court also provided that Hill would receive a 330-day credit for the

time he had spent in custody and that he could be eligible to accrue good-time credits at a rate of

five days per month.  ECF Doc. 13-2 at 32-33.

### B.    Direct Appeal, Case No. 7-18-24

On May 28, 2018, Hill appealed the revocation of his community control to the Ohio

Court of Appeals.  ECF Doc. 13-1 at 39.  Hill's appellate brief raised three assignments of error:

1. The trial court failed to comply with R.C. 2929.19(A) and Criminal
   Rule 32(A)(1) when it failed to inform defendant-appellant that the
   opportunity to speak was for the purpose of the mitigation of his punishment.

2. The trial court abused its discretion by terminating defendant-appellant unsuccessfully from community control in that the trial court committed plain error when it failed to take notice that defendant-appellant's waiver of hearing and his admission in a prior revocation hearing were not made knowingly, and that such error is reversible to prevent a manifest injustice.

3. Appellant's trial counsel provided ineffective assistance of counsel.

ECF Doc. 13-1 at 44, 47, 51-59.

On November 19, 2018, the Ohio Court of Appeals affirmed. ECF Doc. 13-1 at 95-110. The Ohio Court of Appeals explained that the trial court had complied with Ohio Rev. Code § 2929.19(A) and Ohio Crim R. 32(A)(1)'s requirement that a defendant be given an opportunity to speak in allocution when it offered Hill the chance to make a statement at the time of sentencing, which Hill declined. Further, the court pointed out that the trial court heard Hill testify at the revocation hearing, providing background information concerning the alleged violation. ECF Doc. 13-1 at 99-02. The court implied that Hill's testimony had provided the very information his assignment of error asserted he'd been denied the chance to allocute. The court also explained that Hill's second assignment of error failed because: (1) the record showed that the trial court did not base its violation findings on the prior violation of community control or the admissions he made during that hearing; and (2) any challenge to the first revocation proceeding was untimely. ECF Doc. 3-1 at 106-07. Further the court explained that Hill's ineffective-assistance claim was meritless because he had failed to demonstrate prejudice. ECF Doc. 13-1 at 109.

On February 1, 2019, Hill filed an Ohio App. R. 26(A) application for reconsideration. ECF Doc. 13-1 at 111. The Ohio Court of Appeals denied Hill's application because it was not filed within Ohio App. R. 26(A)'s 10-day deadline, which had expired on November 29, 2018. ECF Doc. 13-1 at 113.

7

### C.     Motion for Delayed Appeal of Original Conviction, Case No. 7-18-25

On June 8, 2018, Hill filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Ohio Court of Appeals from his original July 11, 2017 conviction and sentence.  ECF Doc. 13-1 at 152, 154-56.  Hill argued that he had not timely appealed his original conviction and sentence because he had been detained the day after he was sentenced in July and was held in jail until November 2017.  ECF Doc. 13-1 at 156.  On July 25, 2018, the Ohio Court of Appeals denied Hill's motion for leave to file a delayed appeal.  ECF Doc. 13-1 at 157-58.

### D.     Motions for Post-Conviction Relief, Case No. 17-CR-0040

On October 3, 2018, Hill filed a motion for post-conviction relief under Ohio Rev. Code 2929.19(A) and Ohio Crim. R. 32.  ECF Doc. 13-1 at 180-82.  Hill argued that his probation officer had promised on January 4, 2018, that he would "speak with the judge" so that Hill could remain on community control and be released in time for his daughter's graduation.  ECF Doc. 13-1 at 181.  He asserted that the conversation with his probation officer was a "plea agreement," which the state broke by not having his probation officer speak on his behalf during the revocation hearing.  ECF Doc. 13-1 at 181-82.  He also repeated his earlier assignment of error, asserting that he was denied a right to speak on his own behalf at the revocation hearing.  ECF Doc. 13-1 at 182.

On November 13, 2018, Hill filed a second motion for post-conviction relief.  ECF Doc. 13-1 at 189-91.  In his second motion, Hill argued that his community control violation case should have been remanded for resentencing because: (1) he believed based on a conversation with his probation officer that he would be permitted to remain on community control; (2) the state presented invalid evidence at the revocation hearing; and (3) Ohio law limited the length of

prison term that could be imposed upon revocation of his community control to 180 days' imprisonment.  ECF Doc. 13-1 at 189-91.

On November 14, 2018, the state trial court denied Hill post-conviction relief.  ECF Doc. 13-1 at 205-07.  The trial court explained that Hill *was* given an opportunity to speak in allocution and that *res judicata* barred his claim because it could have been raised on direct appeal.  ECF Doc. 13-1 at 206-07.  Hill moved for reconsideration on July 1, 2019, but the trial court denied the motion on July 2, 2019.  ECF Doc. 13-1 at 245.

On July 1, 2018, Hill filed a motion for reconsideration of the order denying him post-conviction relief and requested an evidentiary hearing.  ECF Doc. 13-1 at 235.  The trial court denied the motion on July 2, 2019.  ECF Doc. 13-1 at 245.

### E.      Motions to Withdraw Guilty Plea, Case No. 17-CR-0040

On October 12, 2018, Hill filed a *pro se* motion to withdraw his June 1, 2017, guilty plea. ECF Doc. 13-1 at 185-87.  On October 15, 2018, the trial court denied the motion for lack of jurisdiction because the case was on appeal before the Ohio Court of Appeals.  ECF Doc. 13-1 at 188.

On February 1, 2019, Hill filed a second *pro se* motion to withdraw his guilty plea.  ECF Doc. 13-1 at 208-10.  Hill argued that the reversal of his Bryan Municipal Court conviction made the revocation of his community control a violation of his due process rights.  ECF Doc. 13-1 at 210.  He also argued that the revocation of his community control was based on an abuse of power by city officials and perjury by the arresting officer.  ECF Doc. 13-1 at 209.  On February 4, 2019, the trial court denied Hill's motion, noting that he had not filed a timely appeal from his conviction and that he had not carried his burden to show manifest injustice or any facts that would justify a hearing on the motion.  ECF Doc. 13-1 at 212.

**F.      Delayed Appeal to the Ohio Supreme Court, Case No. 2019-0333**

On March 4, 2019, Hill filed a notice of appeal and application for delayed appeal to the Ohio Supreme Court.  ECF Doc. 13-1 at 115-21.  On May 1, 2019, the Ohio Supreme Court denied Hill's motion for delayed appeal and dismissed the case.  ECF Doc. 13-1 at 145.

**G.      Direct Appeal, Case No. 7-19-03**

On March 5, 2019, Hill filed a *pro se* appeal from the trial court's February 4, 2019, order denying his motion to withdraw his guilty plea.  ECF Doc. 13-1 at 213.  He raised one assignment of error – "the trial court violated the terms of the (written) plea agreement by terminating the defendant from community control without considering information presented at a final revocation hearing regarding the defendant's direct appeal."  ECF Doc. 13-1 at 220-24.

On July 8, 2019, the Ohio Court of Appeals affirmed the trial court's denial of Hill's motion to withdraw his guilty plea.  ECF Doc. 13-1 at 248-52.  The court explained that the record demonstrated that: (1) Hill received his bargained-for benefit of the plea agreement when he was sentenced to community control; and (2) the revocation of his community control did not violate the plea agreement when the agreement specifically contemplated that consecutive 18-month prison terms for each original conviction could be imposed if he violated the terms of his community control.  ECF Doc. 13-1 at 251.  Further, the Ohio Court of Appeals stated that the record showed that Hill was adequately informed of the possible penalties if he violated the terms of his community control and that the trial court did not err in finding that he had violated his community control.  ECF Doc. 13-1 at 251.

**H.      Application to Reopen Direct Appeal, Case No. 7-18-24**

On March 15, 2019, Hill filed nearly identical Ohio App. R. 26(B) applications to reopen his direct appeals in Case No. 7-18-24 and Case No. 7-18-25.  ECF Doc. 13-1 at 146-50 (Case

No. 7-18-24), 173-77 (Case No. 7-18-25).  In both applications to reopen, Hill argued that appellate counsel was ineffective for failing to argue the following assignments of error:

1. Did the sentence imposed by the trial court break the terms of the negotiated plea agreement on June 1, 2017?

2. Would there be a reasonable probability of success had counsel properly placed the issue of the defective waiver properly before this Court of Appeals?

3. Was the defendant denied due process of law and equal protection of laws due to erroneous information by Officer P.H. Steward Napoleon Police Dept. 310 Glenwood Ave. 43545?

4. Did the trial court abuse its discretion by sending the defendant to prison and revoking his community control based on erroneous information by Officer P.H.S. Doctor in an attempt to deprive Benjamen Hill of his liberty which was AKA perjury and conspiracy?

ECF Doc. 13-1 at 148-49, 173-77.

On April 5, 2019, the Ohio Court of Appeals denied both applications.  ECF Doc. 13-1 at 151, 153; 178-79.  The court held that Hill's application to reopen Case No. 7-18-24 was untimely because it was not filed within the 90-day deadline prescribed under Ohio App. R. 26(B).  ECF Doc. 13-1 at 151, 153.  The court also stated that Hill had not raised any genuine issue as to whether counsel was constitutionally ineffective.  ECF Doc. 13-1 at 151.  The court also held that Hill's application to reopen Case No. 7-18-25 was meritless because Hill could not possibly show counsel was ineffective when Case No. 7-18-25 involved only a *pro se* motion to file a delayed appeal.  ECF Doc. 13-1 at 178-79.

## I.     Third Application to Reopen Appeal, Case No. 7-19-03

On July 19, 2019, Hill filed an Ohio App. R. 26(B) application to reopen his appeal in Case No. 7-19-03.  ECF Doc. 13-1 at 253-56.  Hill stated that he wished to raise two assignments of error in his reopened appeal:

11

1. The trial court, prosecutor, and appellate counsel knowingly used perjurious or false testimony to obtain an improper conviction and revoke the community control of the appellant.

2. The prosecutor denied the right to full and fair proceedings by denying the appellant's right to an evidentiary hearing and using "inflammatory" statements at the dispositional phase of the May 1, 2019 revocation hearing as well as a motion to deny post-conviction relief filed on November 19, 2019, in violation of appellants 8th Amendment rights as well as suppressing favorable evidence of actual innocence which entitles a petitioner to habeas corpus relief.

ECF Doc. 13-1 at 254-55.  On August 14, 2019, the Ohio Court of Appeals denied Hill's

application to reopen.  ECF Doc. 13-1 at 275.  Hill did not appeal.

## II.    Federal Habeas Petition

On May 16, 2019, Hill placed into the prison mail system a petition for writ of habeas

corpus.  ECF Doc. 4 at 1.  Hill's petition raises two grounds for relief:

GROUND ONE:  The trial court failed to abide by the terms of the "written" plea agreement on June 1, 2017

**Supporting Facts:**  Where the conviction of the defendant-petitioner was vacated and dismissed by the trial court in Williams County, Ohio the state unreasonably terminated the community control of the defendant making the incarceration of Hill unconstitutional.

GROUND TWO:  Where the trial court failed to allow the petitioner to withdraw his guilty plea to reverse manifest injustice.

**Supporting Facts:**  Where any further incarceration of the defendant-petitioner is unlawful and contrary to law after his conviction was dismissed on January 18, 2019.  The trial court has erred in not allowing the Petitioner to withdraw his plea pursuant to Crim. R. 32.1 post-sentence to reverse manifest injustice.  The trial court's decision to impose a 36-month sentence for an allegation by an unidentified witness is reversible.

ECF Doc. 4 at 6-9.

### III.    Facts

Analysis of Hill's petition begins with the facts recited in the Ohio Court of Appeals' opinions on direct appeal.  These factual findings are presumed correct unless Hill rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  In its November 2018 decision, the Ohio Court of Appeals found the following facts:

> **{¶11}** It is undisputed that the trial court permitted Hill the opportunity to speak at the sentencing hearing following his community-control revocation to which Hill declined. * * *
>
> **{¶12}** . . . At the sentencing hearing, the trial court personally addressed Hill and Hill's trial counsel and provided each the opportunity to speak.  Hill's trial counsel presented a statement on his behalf.  Hill informed the trial court that he did not have anything to add to his trial counsel's statement.
>
> **{¶13}** Further, our review of the record reveals that, during the final revocation hearing, Hill testified and explained the circumstances surrounding the State's allegation that he violated the terms of his community control.  In particular, the following exchange took place:
>
> > [Hill's Trial Counsel]: And Ben what would you like to see as a result of these probation violations or what do you think the Court should impose sentence wise?
> >
> > [Hill]:                          Sentence wise* * * at this time I've served several, several weeks, from December 23rd until May 1st, today. I don't know what the guideline or rules are. I don't want to abandon all hope * * * of probation. I do have a GED and [am] very employable and hard working.
> >
> > [Hill's Trial Counsel]: And Ben, do you have anything further to tell me or the Court at this point?
> >
> > [Hill]:                          Just that, if you would give me the opportunity, if you do wish to impose jail time, I have already served, if the Court would be willing to grant me credit for the 40 days that I was on EMU in June, that would total up to a year that I've served on these sanctions, during the investigation processes

> that have taken place. I would ask maybe, that, the
> last appeal that I filed be taken into consideration as
> well. Just be granted as a first offense and anything
> that [my probation officer] would be willing to
> extend to me, would be very much appreciated.

\* \* \*

{¶22} First, based on our review of the record, the trial court did not consider
Hill's prior community-control violation in revoking his community-control
sanctions. Indeed, the State's motion requesting that the trial court revoke Hill's
community-control sanctions is based on an incident that occurred in Williams
County, Ohio in December 2017. The incident underlying Hill's prior
community-control violation occurred in Henry County, Ohio in July 2017.

{¶23} Further, the trial court plainly stated at the community-control revocation
hearing,

> Well the Court, having listened to the testimony would find that the State
> has met its burden with regard to Item #1, a violation of conditions of
> supervision that the individual will obey federal, state and local laws and
> ordinances based upon the convictions out of the Bryan Municipal Court
> that occurred on January 9, 2018 where there was a guilty finding to a
> misdemeanor two, resisting arrest, and the disorderly conduct with
> persistence, a misdemeanor four, that would constitute the violations. As
> such, the Court, at this time would enter a finding of true or of guilt on that
> particular count. We'll move now to disposition.

In its entry revoking Hill's community-control sanctions and imposing the prison
sentence, the trial court specifically stated,

> Evidence and testimony having been presented by the State and
> Defendant, the Court finds the State has met its burden to support the
> allegations submitted in the Motion to Revoke Community Control as
> listed in Item #l-B and Item #2-C.

In other words, the trial court's decision to revoke Hill's community control
sanctions was not based on his prior-community-control violation.

ECF Doc. 13-1 at 99-101, 105-06 (citations omitted).

And in its July 8, 2019, decision the Ohio Court of Appeals found the following facts:

A review of the record shows that the terms of the written plea agreement were
that l) the second count of the indictment would be amended from aggravated
robbery to attempted robbery, 2) Appellant would enter guilty pleas to count 1
and the amended count 2, and 3) Appellee would recommend community control

14

sanctions with mental health treatment. This Court notes that no transcript of the change of plea hearing was filed in this case. A review of the entry from the change of plea hearing shows that 1) the second count of the indictment was amended from aggravated robbery to attempted robbery and 2) Appellant entered guilty pleas to those charges. There also was no transcript provided by Appellant regarding the initial sentencing hearing. As a result, this Court does not know if the State recommended community control sanctions. However, a review of the judgment entry following that hearing shows that the trial court imposed community control sanctions. The result was that Appellant received all that he bargained for in the agreement. There was no breach of the plea agreement.

* * * The terms of the written plea agreement were dear that Appellant could be sentenced to a maximum prison term of 18 months on each count and that they could be ordered to be served consecutively. The agreement also stated that if he violated the terms of his community control, a prison term could be imposed. The sentencing entry shows that Appellant was informed that a violation of the terms of his community control could result in him being ordered to serve his two 18-month prison terms consecutively. This Court has already determined that the trial court did not err in finding that Appellant violated the terms of his community control.

ECF Doc. 13-1 at 250-51 (citations omitted).

## IV. Law and Analysis

A state prisoner seeking a writ of habeas corpus has the ultimate burden to prove that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, the petitioner has the burden to show that any claim he presents meets all the jurisdictional and procedural requirements required to obtain merits review by the federal habeas court. *See*, *e.g.*, 28 U.S.C. § 2254(b) (exhaustion); 28 U.S.C. § 2244(d) (statute of limitations). For the reasons discussed below, Hill cannot meet either of these burdens with respect to any of the claims raised in his petition and traverse.

### A. Ground One

#### 1. The Parties' Arguments

In his Ground One claim, Hill argues that the trial court: (1) failed to abide by the terms of the June 1, 2017, written plea agreement when it revoked his community control; and

(2) unreasonably terminated his community control based on events that had formed the basis for criminal charges that were later dismissed on procedural grounds.  ECF Doc. 4 at 6; *see also* ECF Doc. 15 at 14-15.  In his traverse, Hill explains that these errors violated his due process rights, which required the court to – at a minimum – find that the court find he violated the terms of his controlled release and that prison was the appropriate penalty for the violation.[4]  ECF Doc. 15 at 14-15; *see also* ECF Doc. 15 at 17-18 (adding under the Ground Two heading that it was improper to revoke his community control when the criminal conviction that was based on the same conduct was vacated and dismissed).

Warden Jackson responds that, if not procedurally defaulted, Hill's Ground One claim is meritless.  ECF Doc. 13 at 23-31.  Warden Jackson argues that the plea agreement was not violated because: (1) Hill knew when he entered the June 2017 plea agreement that he could be sentenced to two consecutive 18-month jail terms if he violated the conditions of his community control; and (2) the Ohio Court of Appeals reasonably concluded that Hill received all he bargained for when the aggravated robbery count was amended and the state recommended a community control sentence.  ECF Doc. 13 at 23-24, 30-31.  Further, Warden Jackson argues that the trial court reasonably concluded that Hill had violated the terms of his community control based on the evidence adduced at the revocation hearing.  ECF Doc. 13 at 26-27. Moreover, Warden Jackson argues that Hill cannot show that he was denied due process in his

---

[4] Arguably, Hill forfeited his due process claim because he failed to invoke his due process rights in his petition and referred to "due process" only in his traverse.  *Compare* ECF Doc. 4 at 6, *with* ECF Doc. 15 at 14-15; *see Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  Nevertheless, were this court to liberally construe the vague claim in Ground One of Hill's petition, the most logical result would be to conclude that Hill had raised a due process claim.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (noting that courts must liberally construe *pro se* filings but are not required to conjure up allegations that were not made).

revocation proceeding when he received all the due process protections prescribed by *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).  ECF Doc. 13 at 28.

## 2.    Procedural Default of Ground One

Warden Jackson argues that Hill's Ground One claim is procedurally defaulted because he never fairly presented it to the Ohio courts at each level of review.  ECF Doc. 13 at 18-20. Warden Jackson also asserts that Hill cannot show cause and prejudice sufficient to excuse his procedural default or that new evidence of actual innocence demonstrates that enforcing the procedural default would result in manifest injustice.  ECF Doc. 13 at 20-22.

In his traverse, Hill asserts that his claim is not procedurally defaulted because he "fairly presented" his claim: (1) to the Ohio Court of Appeals in *State v. Hill*, 2018-Ohio-1345 (Ohio App. Ct. 2018) (appeal from Napoleon Municipal Court conviction), and *State v. Hill*, 2019-Ohio-158 (Ohio App. Ct. 2019) (appeal from Bryan Municipal Court conviction); and (2) to the Ohio Supreme Court in his March 2019 motion to file a delayed appeal.[5]  ECF Doc. 15 at 8-9, 13, 19.  Hill also asserts that he presented his claim in a 42 U.S.C. § 1983 case (*Hill v. Village of Hamler, et al.*, N.D. Ohio Case No. 3:18-cv-2726) which was dismissed without prejudice.  ECF Doc. 15 at 8.

"[T]he procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 938 F.3d at 827.  Federal habeas review is barred when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still

---

[5] Hill specifically references the Ohio Supreme Court's decision denying his motion for leave to file a delayed appeal in *State v. Hill*, 2019-Ohio-1536 (May 1, 2019), which appears in the record at ECF Doc. 13-1 at 145.  *See* ECF Doc. 15 at 9, 19.

available.  *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28

(1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  To determine whether an Ohio

procedural rule bars habeas review, courts in the Sixth Circuit apply a four-part test: (1) did the

petitioner fail to comply with an Ohio procedural rule?; (2) do Ohio courts regularly enforce that

rule?; (3) is the rule an adequate and independent state ground for denying review of a

constitutional claim?; and (4) can the petitioner show cause and prejudice excusing the default?

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Williams v. Coyle*, 260 F.3d 684, 693; *see

also Gerth*, 938 F.3d at 829-830 (holding that Ohio's *res judicata* doctrine is an adequate and

independent state procedural ground that Ohio courts regularly apply).

When the respondent asserts that the petitioner failed to "fairly present" his claim in state

court, the court must decide: (1) whether the petitioner failed to assert both the legal and factual

basis for his claim through the state's ordinary review process; and (2) whether state law no

longer allows the petitioner to raise his claim at the time he filed his federal habeas petition.

*Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228

F.3d 674, 681 (6th Cir. 2000)).  Most importantly, the "'petitioner must present his claim to the

state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id.*

(quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).  "Issues not presented at each and

every level [of the state courts] cannot be considered in a federal habeas corpus petition."

*Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d

337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v.

Marshall*, 757 F.2d 94 (6th Cir. 1985)).

Procedural default may be excused on two bases.  First, the petitioner's procedural

default may be excused if he shows cause and prejudice, *i.e.* that: (1) an external factor to the

defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Warden Jackson is correct that Hill's Ground One claim is procedurally defaulted. Because Hill never filed a timely appeal to the Ohio Supreme Court, and because the Ohio Supreme Court denied his only motion seeking file a delayed appeal, Hill never "fairly presented" *any* claim for review on the merits at each level of Ohio's review process.  *Williams*, 460 F.3d at 806; *Buell*, 247 F.3d at 377; *Scott*, 209 F.3d at 865-68; *Leroy*, 757 F.2d at 94; *Baston*, 282 F. Supp. 2d at 661; ECF Doc. 13-1 at 115-21, 145.  *See also Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (holding that the Ohio Supreme Court's denial of a motion to file a delayed appeal is a procedural ruling barring federal habeas review and not a merits decision). Moreover, Hill's previously dismissed 42 U.S.C. § 1983 case, which was filed in *federal* court,

did not satisfy his obligation to present his *habeas claims* to the *state* courts.  *Wainwright*, 433 U.S. at 80, 84-87; *Williams*, 460 F.3d at 806.  Thus, Hill's Ground One claim is procedurally defaulted.

Hill also cannot overcome his procedural default.  Hill has not argued that any external cause precluded him from filing a timely appeal.  *Coleman*, 501 U.S. at 750.  Further, because Hill's procedural default occurred when he failed to file a timely discretionary appeal to the Ohio Supreme Court and he was not entitled to counsel at that stage, Hill cannot say that ineffective assistance of counsel caused his procedural default.  *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916-17 (N.D. Ohio 2007) (citing *Murray*, 477 U.S. at 488; *Coleman*, 501 U.S. at 750; and *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).   Moreover, Hill's Ground One claim does not present or rely on new evidence of actual innocence such that declining to review his claim on the merits would be a manifest injustice.  *Coleman*, 501 U.S. at 750; *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. t 324.  Thus, Hill has not satisfied his burden to show that his procedural default should be excused.

Accordingly, I recommend that the Court dismiss Hill's Ground One claim as procedurally defaulted.

### 3.     Merits

Even though Hill's Ground One claim is procedurally defaulted, the court may nevertheless choose to deny the claim on the merits.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (explaining that federal courts may ignore a complicated procedural-bar issue when the merits are "easily resolvable against the habeas petitioner").

When reaching the merits of a claim, federal habeas courts apply: (1) a *de novo* standard if the state courts never addressed the claim on the merits; or (2) a highly deferential

reasonableness standard under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA") if a state court did review the claim on the merits. *Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004) (*de novo* standard); *Lindh v. Murphy*, 521 U.S.320, 333 n.7 (1997) ("highly deferential standard for evaluating state-court rulings").  Under the AEDPA standard, "state-court decisions [must] be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), and habeas relief is only available when the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.  *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).  This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.50 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### a.      Breach of Plea Agreement

A petitioner's due process rights could be violated when, among other things the prosecution breaches a plea agreement. *See Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984).  Hill has not shown that the prosecution (or the trial court, as his petition alleges) breached the terms of his plea agreement. ECF Doc. 4 at 6.  Although the trial court wasn't bound by the plea agreement, *see State v. Keyes*, 2006-Ohio-5032, ¶ 8-10 (Ohio App. Ct. 2006), even if we assume it was the Ohio Court of Appeals reasonably determined that Hill's revocation proceeding did not breach the plea agreement.  *See* ECF Doc. 13-1 at 250-51.  A review of the record shows that: (1) Hill received the benefit of his bargain when the court accepted his guilty plea, accepted the request to reduce the aggravated robbery count to attempted robbery, and sentenced Hill to community control; (2) the plea agreement expressly stated that Hill's community control could be revoked if he violated its terms and that he could be sentenced to two consecutive 18-month terms; (3) the prosecution acted *in accordance* with the plea agreement when it sought revocation based on a violation of the terms of community control; and (4) the court acted *in accordance* with the plea agreement's express terms when it revoked his community control and imposed sentence based on his violations of the terms of community control.  ECF Doc. 13-1 at 14-15, 17, 20, 24-25, 35-37; ECF Doc. 13-2 at 30-33.

Hill has neither presented any factual evidence that the trial court breached the plea agreement nor pointed to any factual conclusion by an Ohio court that was unreasonable on the

record presented.  More fundamentally, he has failed to identify any decision of an Ohio court that was contrary to or an unreasonable application of clearly established federal law.  Thus,, if the Court declines to dismiss Hill's Ground One claim because it was procedurally defaulted, I recommend that Hill's Ground One claim be dismissed in part as meritless.

**b.      Due Process in Revocation**

"Even though the revocation of [community control] is not part of the criminal prosecution, . . . the loss of liberty entailed is a serious deprivation requiring that the [defendant] be accorded due process."  *Gagnon*, 411 U.S. at 781 (noting that there is no relevant difference between parole revocation and probation revocation).  Due process requires two hearings: (1) a probable cause hearing to determine if there was a violation; and (2) a "more comprehensive hearing prior to the making of the final revocation decision."  *Id.* at 781-82.  At the very least, the defendant is entitled to: (1) notice of the alleged violations; (2) a conditional right to confront the evidence against him; (3) an opportunity to speak and present evidence on his own behalf; (4) a neutral and detached decision-maker; and (5) a written report of the hearing, facts found, and reasons for revoking probation.  *Id.* at 786.

The record demonstrates that the trial court complied with all the requirements outlined in *Gagnon* when it revoked Hill's community control.  *Id.*  The state's detailed motion to revoke Hill's community control was written notice of the of the alleged violations.  ECF Doc. 13-1 at 35.  Hill had an opportunity to speak on his own behalf and confront the allegations at both the probable cause hearing and the revocation hearing.  ECF Doc. 13-2 at 8-10, 12-33.  Hill had an opportunity to cross-examine the witnesses against him and present his own evidence at the revocation hearing.  ECF Doc. 13-2 at 12-33.  There is no indication that the judge presiding over Hill's revocation abandoned his role as a neutral decision-maker.  *See* ECF Doc. 13-2 at 8-

10 (refraining from commenting on the merits of the allegations or whether Hill's community control should be revoked at the probable cause hearing); ECF Doc. 13-2 at 12-33 (reserving judgment until after both the State and Hill presented their evidence); *see Pruitt v. Epps*, No. 3:13-cv-988, 2016 U.S. Dist. LEXIS 31246, at *32-33 (S.D. Miss. Feb. 15, 2016) (judge was a "neutral and detached" decision maker when he simply exercised his authority in a revocation proceeding); *but see Valley v. Sec'y Fla. Dep't Corr.*, No. 16-17669, 2018 U.S. App. LEXIS 29 ,at *12-13 (11th Cir. Oct. 17, 2018) (judge departed from neutral role by ordering testimony from witnesses that the state had never sought to call, but that departure did not violate clearly established law.  And the court issued a written order explaining that Hill's probation was revoked because he had committed the violations described in Items 1-B and 2-C of the state's motion to revoke his community control. ECF Doc. 13-1 at 36.  Therefore, because the state trial court complied with all the due process requirements laid out in *Gagnon*, any argument that the revocation proceeding violated Hill's due process rights is meritless.  *Gagnon*, 411 U.S. at 781-82, 786.

Moreover, Hill has not pointed to a single decision by the U.S. Supreme Court indicating that a criminal defendant's due process rights – or any other constitutional rights – are violated when his probation is revoked but the criminal charges based on the same conduct were dismissed or vacated.  *See generally* ECF Doc. 4; ECF Doc. 15; 28 U.S.C. § 2254(d)(1); *Bell*, 535 U.S. at 694; *Bobby*, 565 U.S. at 24; *Harrington*, 562 U.S. at 102-103.  And decisions from both the Ohio Supreme Court and Sixth Circuit indicate that probation may be revoked even when criminal charges based on the same conduct are dismissed, the defendant was acquitted of those charges, or the conviction was overturned.  *Cf. Flenoy v. Ohio Adult Parole Auth.*, 56 Ohio St. 3d 131, 132 (Ohio 1990) (permitting revocation under those circumstances for Ohio

probationers); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (permitting

revocation under those circumstances for federal probationers).  This conclusion makes sense.  A

probationer can violate the terms of community control by his conduct; no *conviction* for that

conduct is required.  One can disobey the law without being convicted; a person driving ninety

miles an hour engages in conduct that violates the law even if no police officer observes it or

issues a citation.  Hence, testimony at Hill's revocation hearing tending to show that he resisted

arrest, damaged county property, and was intoxicated in Williams Count provided a sufficient

basis for the trial court to revoke Hill's community control.  No conviction was necessary.  Thus,

the later reversal of that conviction on procedural grounds is irrelevant.  And Hill's personal

conviction that the testimony of Officer Doctor should not have been believed also is irrelevant.

It was the trial court's obligation to judge the credibility of that evidence and accept or reject it.

No violation of Hill's due process rights occurred.

Accordingly, if the Court declines to dismiss Hill's Ground One claim on the basis of

procedural default, I would recommend that Hill's Ground One claim be dismissed in part as

meritless.

> **B.**  **Ground Two**

> > **1.**  **The Parties' Arguments**

In his Ground Two claim, Hill argues that the trial court violated Ohio Crim. R. 32.1

when it denied his motion to withdraw his guilty plea for "manifest injustice."  ECF Doc. 4 at 8.

Hill asserts that, when his conviction was reversed on January 18, 2019, any further incarceration

was unlawful, and the court was required to allow him to withdraw his guilty plea.  ECF Doc. 4

at 8.  Hill's traverse provides little to clarify this claim but instead generally argues several of the

forfeited claims discussed below in Section V.D.2.  *See* ECF Doc. 15 at 16-21.  Hill does add,

however, that he had told the prosecutor at some point after his July 2017 sentencing that he wished to withdraw his guilty plea and that the prosecutor informed him she could not give him advice.  ECF Doc. 15 at 20-21.

Warden Jackson responds that Hill's Ground Two claim does not allege a constitutional violation and, at most, asserts a state law error that is not cognizable on federal habeas review.  ECF Doc. 13 at 31-32.  Further, Warden Jackson asserts that the decision to grant or deny a defendant's motion to withdraw his guilty plea is committed to the trial court's discretion, and that abuse-of-discretion claims are generally not a basis for federal habeas relief.  ECF Doc. 13 at 33.  Moreover, Warden Jackson argues that – to the extent that the state court did not follow state law – no due process violation occurred because following Ohio Crim. R. 32.1 was not a federal due process obligation.  ECF Doc. 13 at 33.

### 2.    Cognizability

A claim that alleges only violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  Further, a petitioner may not convert a claim asserting state law error into a constitutional claim, merely by alleging that the failure to follow a state rule violated his due process rights.  *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a

criminal trial."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure).

Nevertheless, state court rulings on issues of state law may rise to the level of due process violations if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Such rulings must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised when "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Thus, courts "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

Warden Jackson is correct that Hill's Ground Two claim is non-cognizable because it fails to allege any federal constitutional violation and alleges only that the trial court committed a state-law error. "[T]here is no federal constitutional right to withdraw a guilty plea . . . [or[ to an evidentiary hearing on a motion to withdraw a guilty plea." *Nicholson v. La Rose*, No. , 2015 U.S. Dist. LEXIS 50868, at *26 (N.D. Ohio Jan. 8, 2015) (collecting cases), *adopted by* 2015

27

U.S. Dist. LEXIS 50867 (N.D. Ohio Apr. 17, 2015).  Moreover, Hill has not pointed to any decision by the U.S. Supreme Court indicating that the denial of a motion to withdraw a guilty plea after a later, unrelated conviction was reversed by the state appellate court, is among the narrow category of errors that would undermine "fundamental fairness."  *See generally* ECF Doc. 4; ECF Doc. 15.  Thus, Hill cannot convert into a cognizable due process claim his claim that the state trial court violated Ohio Crim. R. 32.1 by denying his motion to withdraw his guilty plea. *Rivera*, 556 U.S. at 158; *Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352.  Therefore, because Hill's Ground Two claim raises only a state-law issue and does not allege a constitutional violation, his Ground Two claim is non-cognizable.  *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780.[6]  I recommend that Hill's Ground Two claim be dismissed as non-cognizable.

### 3.    Procedural Default

Warden Jackson also correctly argues that Hill's Ground Two claim is procedurally defaulted for the same reasons his Ground One claim is procedurally defaulted.  ECF Doc. 13 at 34-36.  Like his Ground One claim, discussed in Section IV.A.2., *supra*, Hill procedurally defaulted on his Ground Two claim when he failed to "fairly present" *any* claim for review on the merits at each level of Ohio's review process.  *Williams*, 460 F.3d at 806; *Buell*, 247 F.3d at 377; *Scott*, 209 F.3d at 865-68; *Leroy*, 757 F.2d at 94; *Baston*, 282 F. Supp. 2d at 661; ECF Doc. 13-1 at 115-21, 145.  And Hill cannot overcome his procedural default because he has not argued that an external actor or thing precluded him from filing a timely appeal, because he was not entitled to counsel at the Ohio Supreme Court level, and because his Ground Two claim does not

---

[6] It is important to note that Hill has not raised a claim challenging whether his constitutional rights were violated *when he entered the plea*.  *See* ECF Doc. 4; ECF Doc. 15.  Even if he had, that claim would be untimely for the reasons discussed in Section V.D.1., *infra*.

rely on new evidence of actual innocence.  *Tanner*, 516 F. Supp. 2d at 916-17; *Murray*, 477 U.S. at 488; *Coleman*, 501 U.S. at 750; *Finley*, 481 U.S. at 555; *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. t 324.

Even if Hill's Ground Two claim were cognizable, it should be dismissed as procedurally defaulted.

### C.    Other Claims

#### 1.    Untimely Claims

Hill's traverse includes several statements that appear to challenge his underlying July 2017 conviction and the November 2017 revocation proceeding in which the court imposed additional terms for Hill's community control.  *See* ECF Doc. 4 at 6-8; ECF Doc. 15.  But any challenge to either proceeding in Hill's May 16, 2019, habeas petition is untimely.

Claims challenging an underlying conviction and claims challenging subsequent revocation proceedings related to the terms imposed following the original conviction are different claims.  *Cf. Williams v. Smith*, No. 3:11-cv-578, 2012 U.S. Dist. LEXIS 129522, at *4 (E.D. Va. Sept. 10, 2012) ("Whe[n] a petitioner challenges both his original conviction and probation revocation related to that conviction in the same 28 U.S.C. § 2254 petition, it is appropriate for the Court to separate the claims relating to the original conviction from the claims relating to the probation revocation."); *accord Freeman v. Little*, No. 1:12-cv-81, 2013 U.S. Dist. LEXIS 118397, at *11-13 (D. Idaho Aug. 19, 2013).  And each distinct habeas claim must be evaluated for timeliness.  *See Retic v. United States*, 321 F. App'x 865, 865 (11th Cir. 2009) (affirming district court's conclusion that separate judgments attacked in the same habeas petition have separate statutes of limitations); *see also Huy The Luu v. Gower*, No. C-14-044, 2015 U.S. Dist. LEXIS 81435, at *11 (N.D. Cal. June 23, 2015) ("Allowing a collateral attack on

the underlying sentence of probation from a probation revocation proceeding would also thwart the habeas statute of limitations.") (citing *United States v. Castro-Verdugo*, 750 F.3d 1065 (9th Cir. 2014)).  Thus, we must determine when the July 2017 conviction became final and when the November 2017 revocation proceeding became final to determine the respective AEDPA limitations periods for each.

Because Hill did not file an appeal from either proceeding, the AEDPA statute of limitations began to run on: (1) August 12, 2017, for the July 2017 conviction and sentence; and (2) December 2, 2017, for the November 2017 revocation proceedings.  *See* Ohio App. R. 4(A) (providing a 30-day deadline for an appeal to the Ohio Court of Appeals); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (noting that the one-year statute of limitations in 28 U.S.C. § 2244(d)(1)(A) begins to run when the time for seeking direct review in the state court expires). While a timely state post-conviction petition or collateral motion could have tolled the AEDPA limitations period, Hill never filed a post-conviction petition challenging his July 2017 conviction or the November 2017 revocation proceedings.  28 U.S.C. § 2244(d)(2); *see* ECF Doc. 13-1 at 180-82, 189-91 (post-conviction petitions challenging only the January through May 2018 revocation proceedings).  Assuming that Hill's June 8, 2018, motion for leave to file a delayed appeal from his July 2017 conviction tolled the time to file a habeas claim challenging *both* his July 2017 conviction and his November 2017 revocation proceeding, the 365-day period to file a habeas claim expired on: (1) September 28, 2018, for any habeas claim challenging the July 2017 conviction; and (2) January 29, 2019, for a claim challenging the November 2017 revocation proceeding.  *See DiCenzi v. Rose*, 452 F.3d 465, 469 (holding that a properly filed motion for a delayed appeal tolls the AEDPA limitations period); ECF Doc. 13-1 at 152, 154-56 (motion for delayed appeal), 157-58 (order denying the motion for delayed appeal on July 25,

30

2018).  Because Hill did not file his federal habeas petition until May 16, 2019 – well after either

deadline had expired – any challenge to Hill's July 2017 conviction and November 2017

revocation proceeding is barred by the AEDPA statute of limitations period.

Accordingly, I recommend that the Court dismiss as untimely any challenge to Hill's July

2017 conviction and November 2017 revocation proceeding.

### 2.    Claims Raised for the First Time in Hill's Traverse

Hill's traverse raises – for the first time – numerous claims scattered between his Ground

One and Ground Two argument sections that are either forfeited or both forfeited and non-

cognizable.[7]  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the . . .

argument was first presented in [petitioner's] traverse rather than in his habeas petition, it was

not properly before the district court, and the district court did not err in declining to address

it."); *Estelle*, 502 U.S. at 68 (holding that state law violations are not cognizable on federal

habeas review).  Such claims include: (1) that his confrontation rights were violated at the May

2018 revocation proceeding when the state used hearsay evidence; (2) that officers engaged in

conspiracies to violate his Fourth Amendment right against unreasonable seizure; (3) that his

detention was the result of political retaliation; (4) that he was denied his Sixth Amendment right

to counsel; (5) that insufficient evidence supported the finding that he violated the terms of his

community control; (6) that the state "unreasonably used" evidence in his revocation proceeding;

and (7) that the court abused its discretion or committed a sentencing error when it revoked his

community control and imposed consecutive 18-month sentences for each of the original

offenses.  *See* ECF Doc. 4 (not presenting any of these claims); ECF Doc. 15 at 9-13, 16, 18

(presenting these claims for the first time); *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir.

---

[7] Warden Jackson also notes in her return of writ that Hill's abuse-of-discretion and sentencing-error
claims – to the extent that he raised such claims – are non-cognizable.  ECF Doc. 13 at 28-29.

1979) (admissibility of evidence noncognizable on federal habeas review); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) ("[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation."); *Howard v. White*, 75 F. App'x 52, 53 (6th Cir. 2003) (state court's interpretation of state sentencing laws and guidelines is not cognizable on federal habeas review).  Hill's argument that this court erred in dismissing a 42 U.S.C. § 1983 case that he had filed in relation to some of the events underlying this case is also forfeited because he did not raise it in his petition and is non-cognizable because it does not fall within the types of claims authorized in 28 U.S.C. § 2254.  ECF Doc. 15 at 8-9; *Tyler*, 416 F.3d at 504; 28 U.S.C. § 2254. Because Hill raised each of these claims for the first time in his traverse and because several of them are non-cognizable, I recommend that the court dismiss each of these claims as forfeited or both forfeited and noncognizable.

## V.      Certificate of Appealability

### A.      Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of 28 U.S.C. § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253 (c)(2)."  Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the COA issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a

32

federal constitutional right.  *See, Cunningham v. Shoop,* 817 F. App'x 223, 225 (6th Cir. Aug 24, 2020).  A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis,* 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 327, 336 (2003)); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack,*  529 U.S. at 484.

    **B.**    **Analysis**

       If the Court accepts my recommendations, Hill will not be able to show that the Court's rulings on his Grounds One and Ground Two claims are debatable among jurists of reason.  Both claims are procedurally defaulted.  Moreover, Hill's Ground One claim is plainly meritless and his Ground Two claim is plainly non-cognizable.  Thus, habeas relief is not available for the issues identified in Ground One and Ground Two of Hill's petition.  Hill will also not be able to show that the Court's rulings on his untimely, forfeited, and non-cognizable claims raised in his traverse are debatable among jurists of reason.

       Because jurists of reason would not find debatable that habeas relief is not available for any of the claims raised in Hill's petition or raised for the first time in his traverse, I recommend that no certificate of appealability issue in this case.

## VI.    Recommendation

Hill's Ground One claim is procedurally defaulted and meritless.  His Ground Two claim is procedurally defaulted and non-cognizable.  And the other claims he raises in his traverse are untimely, forfeited, and non-cognizable.  Accordingly, I recommend that all of Hills claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Hill not be granted a certificate of appealability.

Dated: October 15, 2020

Thomas M. Parker
United States Magistrate Judge

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).